IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **THERMOLIFE INTERNATIONAL, LLC**, <br><br> Plaintiff, <br><br> v. <br><br> **HI-TECH PHARMACEUTICALS, INC.**; **JARED WHEAT**; **A1 SUPPLEMENTS, INC.**; **DPS NUTRITION**; **SUPPLEMENT CENTRAL**; **I-SUPPLEMENTS.COM**; **EVITAMINS**; **SUPPZ, INC.**; **SUPPLEMENTWAREHOUSE.COM**; **ISLAND SUPPLEMENTS**; **NETNUTRI**; **MUSCLE FOODS USA**; **BLACK DIAMOND SUPPLEMENTS**; and **NUTRITION JUNGLE**, <br><br> Defendants. | Case No. _____ <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff ThermoLife International, LLC ("Plaintiff") for its Complaint against Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech"); Jared Wheat; A1 Supplements, Inc.; DPS Nutrition; Supplement Central; I-Supplements.com; eVitamins; Suppz, Inc.; Supplementwarehouse.com; Island Supplements; Netnutri; Muscle Foods USA; Black Diamond Supplements; and Nutrition Jungle (collectively,

"Defendants"), on personal knowledge as to its own activities and on information and belief as to the activities of others, hereby alleges as follows:

## I. THE PARTIES

1.      Plaintiff ThermoLife International, LLC is a limited liability company organized and existing under the laws of Arizona, with a place of business at 1811 Ocean Front Walk in Venice, California, 90291.    Plaintiff is a leading manufacturer in the sports nutrition and supplement industry.

### A. MANUFACTURER/DISTRIBUTOR DEFENDANTS

2.      Defendant Hi-Tech is a corporation organized and existing under the laws of Georgia and with a principal place of business at 6015-B Unity Drive in Norcross, Georgia.  Hi-Tech advertises, offers to sell, and sells products, including Jack'd Up and Phosphagen, through the website https://hitechpharma.com/index.htm, and encourages prospective purchasers to contact High-Tech at 6015-B Unity Drive in Norcross, Georgia.  Defendant Hi-Tech may be served in this District through its registered agent, Jared Wheat, at 6015-B Unity Dr., Norcross, Georgia, 30071.

3.      Defendant Jared Wheat is an individual doing business as APS Nutrition and having a business address of 6015-B Unity Dr., Norcross, Georgia, 30071.

4.     Defendants    Hi-Tech    and    Jared    Wheat    (collectively    the "Manufacturer/Distributor Defendants") conduct business activities, including those complained of herein, within this District, which business activities include but are not limited to the formulation, manufacture, offer to sell, and sale of dietary supplement products that infringe one or more claims of the Patents-in-Suit (the "Accused Products"), including without limitation products sold under the "Jack'd Up" brand name.

5.     By way of example, Manufacturer/Distributor Defendants directly or through intermediaries (including distributors, retailers, and others) make, manufacture, ship, distribute, advertise, market, offer for sale, and/or sell the Accused Products within this District, including selling the Accused Products to their co-Defendants from within this District.

## B. RETAILER DEFENDANTS

6.     Defendant A1 Supplements, Inc. is an entity organized and existing under the laws of Tennessee with a principal place of business at 860 Lakemont Drive in Louisville, Tennessee, 37777. A1 Supplements offers to sell and sells products, including Jack'd Up, Phosphagen, Creatine Nitrate, and Mesomorph, through the website www.a1supplements.com.

7.    Defendant DPS Nutrition is an entity organized and existing under the laws of Pennsylvania with a principal place of business at 29 Stauffer Industrial Park in Taylor, Pennsylvania, 18517.   DPS Nutrition offers to sell and sells products, including Jack'd Up, through the website www.dpsnutrition.net.

8.    Defendant Supplement Central is an entity organized and existing under the laws of Pennsylvania with a principal place of business at 406 Parkway View Drive in Pittsburgh, Pennsylvania, 15205.  Supplement Central offers to sell and sells products, including Jack'd Up, Phosphagen, Mesomorph, and Mesomorph 2.0, through the website www.supplementcentral.com.

9.    Defendant I-Supplements.com is an entity organized and existing under the laws of Ohio with a principal place of business at 7227 Montgomery Road in Cincinnati, Ohio, 45236.   I-Supplements.com offers to sell and sells products, including Jack'd Up, Creatine Nitrate, and Mesomorph, through the website www.i-supplements.com.

10.    Defendant eVitamins is an entity organized and existing under the laws of Michigan with a principal place of business at 51260 Danview Technology in Shelby Township, Michigan, 48315.  eVitamins offers to sell and sells products, including Jack'd Up, through the website www.evitamins.com.

11.    Defendant Suppz Inc. is an entity organized and existing under the laws of Wisconsin with a principal place of business at 1535 LaFollette Street in Fennimore, Wisconsin, 53809.  Suppz Inc. offers to sell and sells products, including Jack'd Up, through the website www.suppz.com.

12.    Defendant SupplementWarehouse.com, Inc. is an entity organized and existing under the laws of Wisconsin with a principal place of business at 2440 Corporate Preserve Drive in Oak Creek, Wisconsin, 53154. SupplementWarehouse.com, Inc. offers to sell and sells products, including Jack'd Up, Creatine Nitrate, and Mesomorph, through the website www.supplementwarehouse.com.

13.    Defendant Island Supplements is an entity organized and existing under the laws of Minnesota with a principal place of business at 1311 Industrial Drive #B in New Braunfels, Minnesota, 78130.  Island Supplements offers to sell and sells products, including Jack'd Up and Mesomorph 2.0, through the website www.islandsupplements.com.

14.    Defendant Netnutri is an entity organized and existing under the laws of New Jersey with a principal place of business at 560 55th Street, 2nd Floor in West New York, New Jersey, 07093.  Netnutri offers to sell and sells products,

including Jack'd Up, Phosphagen, and Mesomorph, through the website www.netnutri.com.

15.    Defendant Muscle Foods USA is an entity organized and existing under the laws of Pennsylvania with a principal place of business at 701 Hudson Avenue in Scranton, Pennsylvania, 18504.  Muscle Foods USA offers to sell and sells products, including Jack'd Up, Phosphagen, and Mesomorph, through the website www.musclefoodsusa.com.

16.    Defendant Black Diamond Supplements is an entity organized and existing under the laws of Arizona with a principal place of business at PO Box 73185 in Phoenix, Arizona, 85050.  Black Diamond Supplements offers to sell and sells products, including Jack'd Up and Mesomorph, through the website www.blackdiamondsupplements.com.

17.    Defendant Nutrition Jungle is an entity organized and existing under the laws of New York with a principal place of business at PO Box 402 in LaGrangeville, New York, 12540.  Nutrition Jungle offers to sell and sells products, including Jack'd Up, Phosphagen, Creatine Nitrate, and Mesomorph, through the website www.nutritionjungle.com.

18.    Defendants A1 Supplements, Inc., DPS Nutrition, Supplement Central, I-Supplements.com, eVitamins, Suppz Inc., SupplementWarehouse.com,

Inc., Island Supplements, Netnutri, Muscle Foods USA, Black Diamond Supplements, and Nutrition Jungle (collectively the "Retailer Defendants") conduct business activities, including those complained of herein, within this District, which business includes but is not limited to the offer to sell the Accused Products within this District.

19.    By way of example, Retailer Defendants directly or through intermediaries (including distributors, retailers, and others) advertise, market, and/or offer to sell the Accused Products through their online stores and websites pursuant to the terms of a supply/purchase contract with Manufacturer/Distributor Defendants located in this District.

20.    By way of further example Retailer Defendants derive their revenue, at least in part, from product sales on the Internet through their online stores and websites, and they transact business throughout the United States, including in this District.

## II.  JURISDICTION, VENUE, AND JOINDER

21.    This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code. Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

22.    This Court has personal jurisdiction over Manufacturer/Distributer Defendants because each has sold the Accused Products in the State of Georgia, actively induced and/or contributed to infringement in the State of Georgia, and/or has established regular or systematic contacts with the State of Georgia.   In addition, this Court has personal jurisdiction over Manufacturer/Distributer Defendants because they are citizens of the State of Georgia.

23.    This Court has personal jurisdiction over Retailer Defendants because each has offered to sell the Accused Products in the State of Georgia through their online stores and websites and/or has established regular or systematic contacts with the State of Georgia by transacting business with Manufacturer/Distributor Defendants in this District.

24.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400.

25.    Joinder of all Defendants is proper under Rule 20 of the Federal Rules of Civil Procedure and 35 U.S.C. § 299.  Manufacturer/Distributor Defendants are jointly liable for infringement with Retailer Defendants with respect to successive sales of the same Accused Products manufactured, supplied, and/or provided by Manufacturer/Distributor Defendants.   As such Plaintiff's patent infringement

claims against all Defendants give rise to common questions of fact and issues of law.

### III.  <u>FACTUAL BACKGROUND</u>

26.    Plaintiff is the owner of the following United States Patents:

a.    Patent No. 8,455,531 ("the '531 Patent"), titled "Amino Acid Compositions" (Exhibit A), which was duly and legally issued by the United States Patent and Trademark Office on June 4, 2013;

b.    Patent No. 8,466,187 ("the '187 Patent"), titled "Amino Acid Compositions" (Exhibit B), which was duly and legally issued by the United States Patent and Trademark Office on June 18, 2013;

c.    Patent No. 8,183,288 ("the '288 Patent"), titled "Amino Acid Compositions" (Exhibit C), which was duly and legally issued by the United States Patent and Trademark Office on May 22, 2012; and

d.    Patent No. 8,178,572 ("the '572 Patent"), titled "Amino Acid Compositions" (Exhibit D), which was duly and legally issued by the United States Patent and Trademark Office on May 15, 2012.

27.    The above patents are referred to herein as the "Patents-in-Suit."  The '531 and '187 Patents are, as of the time of the filing of this Complaint, undergoing re-examination or *inter partes* review proceedings before the United States Patent

and Trademark Office, but not with respect to claims that Plaintiff will assert against Defendants in this matter.

28.   Defendants have committed patent infringement within the State of Georgia, and more particularly, within the Northern District of Georgia, by virtue of the fact that Defendants have formulated, made, manufactured, shipped, distributed, advertised, offered for sale, or sold the Accused Products in this District, and continue to do so.

## A. DIRECT INFRINGEMENT

29.   Defendants' employees, agents, representatives, and other individuals sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities, have taken and used the Accused Products.

30.   Manufacturer/Distributor   Defendants'   employees,   agents, representatives,   and   other   individuals   sponsored   by   or   who   endorse Manufacturer/Distributor Defendants have orally administered the Accused Products.

31.   The Accused Products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include certain ingredients that, by virtue of their inclusion in the products, infringe one or more claims of one or more of the Patents-in-Suit.

32.    The Accused Products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include specific ingredients for certain purposes that, by virtue of their inclusion in the products for such purposes, infringe one or more claims of one or more of the Patents-in-Suit, and as a result, when Defendants' employees, agents, representatives, and other individuals sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities use or take the Accused Products, they are practicing the methods recited in those claims.

33.    The Accused Products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Manufacturer/Distributor Defendants to include specific ingredients for certain purposes that, by virtue of their inclusion in the products for such purposes, infringe one or more claims of one or more of the Patents-in-Suit, and as a result, when Manufacturer/Distributor Defendants' employees, agents, representatives, and other individuals sponsored by or who endorse Manufacturer/Distributor Defendants and Manufacturer/Distributor Defendants' products in advertising and marketing activities orally administer the Accused Products, they are practicing the methods recited in those claims.

34.     Jack'd Up's label, for example, lists the following infringing ingredients: L-arginine alpha-ketoglutarate, creatine nitrate, creatine HCL, disodium creatine phosphate, creatine monohydrate, beta alanine, and agmatine sulfate.

35.     Phosphagen's label, for example, lists the following infringing ingredients: creatine HCL, creatine nitrate, disodium creatine phosphate tetrahydrate, beta alanine, and creatine phosphate.

36.     Creatine Nitrate's label, for example, lists the following infringing ingredients: creatine nitrate and Di-creatine malate.

37.     Mesomorph's label, for example, lists the following infringing ingredients: beta alanine, L-Citrulline DL-Malate 2:1, arginine alpha-ketoglutarate, Di-creatine malate, creatine nitrate, creatinol-O-phosphate, and agmatine sulfate.

38.     Mesomorph 2.0's label, for example, lists the following infringing ingredients: beta alanine, L-citrulline, arginine alpha-ketoglutarate, Di-creatine malate, creatine nitrate, creatinol-O-phosphate, and agmatine sulfate.

39.     The purposes for which these ingredients are included in the Accused Products are, without limitation, to increase the bioabsorption of amino acids, to increase vasodilative characteristics of end-users, to increase athletic performance

of end-users, to increase distribution of amino acids to muscles, and to increase solubility of amino acids.

40.    For instance, and by way of example, the labels and/or advertisements for certain Defendants' products make the following claims: "increase the levels of phosphocreatine in muscle"; "enhancing creatine uptake"; "make[s] the ingredient they are bonded to more effective"; "much better water solubility than any creatine so far"; "vascularity"; "intensity of muscular contraction"; "more vasodialation and vascularity than ANY current N.O./pump product"; "ultimate pre-workout complex"; and "skin-splitting vascularity and insane pumps."  Examples of such labels and/or advertisements are attached hereto as Exhibit E.

41.    Defendants have encouraged and/or are aware of the fact that their employees, agents, representatives, and other individuals sponsored by Defendants or who endorse Defendants and Defendants' products in advertising and marketing activities orally administer the Accused Products and practice the methods recited in one or more claim of one or more of the Patents-in-Suit, and these employees, agents, representatives, and other individuals sponsored by Defendants or who endorse Defendants and Defendants' products in advertising and marketing activities are acting under Defendants' direction and control when practicing those methods.

42.     Therefore, Defendants are direct infringers of one or more claims of one or more of the Patents-in-Suit, and Defendants practice the methods as set forth in one or more claims of one or more of the Patents-in-Suit.

## B. INDIRECT INFRINGEMENT

43.     End-users of Defendants' Accused Products are also direct infringers of one or more claims of one or more of the Patents-in-Suit.

44.     End-users of Defendants' Accused Products have taken, used, and orally administered the Accused Products.

45.     The Accused Products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and/or sold by Defendants to include certain ingredients that, by virtue of their inclusion in the products, infringe one or more claims of one or more of the Patents-in-Suit.

46.     The Accused Products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and/or sold by Defendants to include specific ingredients for certain purposes that, because of their inclusion in the products for such purposes, infringe one or more claims of one or more of the Patents-in-Suit, and as a result, when end-users of Defendants' Accused Products orally administer the Accused Products, they are practicing the methods recited in those claims.

47.    Defendants' labels and advertising for the Accused Products explain the elements and essential elements of one or more of the methods disclosed in the Patents-in-Suit, and those labels and advertising statements encourage, urge, and induce the Accused Products' end-users to purchase and orally ingest the products to practice those methods, and end-users do practice those methods.

48.    Defendants have therefore specifically intended to cause these end-users to directly infringe the claimed methods of these patents, and have in fact urged them to do so.

49.    The Accused Products are not suitable for non-infringing uses, and Defendants' labels or advertisements for the Accused Products do not disclose any non-infringing uses for the products or for the compounds.

50.    The inclusion of the specific infringing compounds in the products is material to practicing such methods.

51.    Defendants have knowledge that the Accused Products are especially adapted by end-users of the products for the practicing of such methods, and, indeed, Defendants encourage, urge, and induce the Accused Products' end-users to purchase and orally administer the Accused Products to practice such methods, and have done so in the past.

52.     Defendants have intentionally and knowingly induced, encouraged, and urged end-users of the Accused Products to purchase and orally administer the Accused Products for the purposes of practicing the claimed methods, by having them orally ingest the compounds recited in such claims.

53.     Defendants have knowledge of the fact that the Accused Products, particularly as administered, infringe on one or more claims of the Patents-in-Suit.

54.     Defendants have direct, firsthand knowledge of the Patents-in-Suit. Specifically, Plaintiff and its licensees have marked their products embodying the Patents-in-Suit in accordance with 35 U.S.C. § 287.

55.     For further example and without limitation, Defendants have had knowledge of the Patents-in-Suit since as early as at least March 17, 2015, when a letter was sent to Hi-Tech and APS Nutrition informing them of their infringement, to which an initial infringement review was attached, which letter was copied to Hi-Tech and APS Nutrition's retailers and distributors, including Retailer Defendants named in this action.  A true and accurate copy of that letter is attached hereto as Exhibit F.  Hi-Tech was also the recipient of prior letters and litigation relating to Plaintiff's relevant patents for several years predating this Complaint.

56.   Defendants have willfully infringed the Patents-in-Suit despite knowledge of the patents' existence and their knowledge of the Accused Products' infringement of the patents.

57.   At a minimum, and in the alternative, Plaintiff alleges that Defendants willfully blinded themselves to the infringing nature of the Accused Products' sales.

58.   Defendants continue to directly infringe, contributorily infringe, and induce infringement by end-users despite their knowledge of the Patents-in-Suit and their infringing activities with respect to the Patents-in-Suit.

## IV.  FIRST CAUSE OF ACTION
### INFRINGEMENT OF U.S. PATENT NO. 8,455,531

59.   Plaintiff incorporates the foregoing paragraphs of this Complaint by reference as if fully set forth herein.

60.   Defendants have in the past and continue to directly infringe— literally and under the doctrine of equivalents—one or more claims of the '531 Patent by making, using, selling, and offering for sale the Accused Products, and will continue to do so unless enjoined by this Court.

61.   In addition to the fact that Defendants make, use, offer for sale, and sell the Accused Products, further examples of Defendants' direct infringement include, without limitation, the fact that Defendants have encouraged and/or are

aware of the fact that their employees, agents, representatives, and other individuals sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities orally administer the Accused Products and practice the methods recited in one or more claims of the '531 Patent, and these employees, agents, representatives, and other individuals sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities are acting under Defendants' direction and control when practicing those methods.

62.    Defendants have encouraged and are aware of these individuals' oral administration of the Accused Products for these purposes, these individuals are acting under Defendants' direction and control, and therefore Defendants are directly practicing the methods disclosed in the '531 Patent.

63.    End-users of Defendants' Accused Products are also direct infringers of one or more claims of the '531 Patent.

64.    End-users of Defendants' Accused Products have taken, used, and orally administered the Accused Products.

65.    The Accused Products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include certain

ingredients that, by virtue of their inclusion in the products, infringe one or more claims of the '531 Patent.

66.   The Accused Products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include specific ingredients for purposes that, by their inclusion in the products for such purposes, infringe one or more claims of the '531 Patent, and as a result, when end-users of Defendants' Accused Products orally administer the Accused Products, they are practicing the methods recited in one or more claims of the '531 Patent.

67.   Defendants' labels and advertising for the Accused Products explain the elements and essential elements of the methods disclosed in the '531 Patent, and those labels and advertising statements encourage, urge, and induce the Accused Products' end-users to purchase and orally ingest the products to practice those methods, and end-users do practice those methods.

68.   Defendants have therefore specifically intended to cause these end-users to directly infringe the claimed methods of the '531 Patent, and have in fact urged them to do so.

69.   The Accused Products are not suitable for non-infringing uses, and Defendants' labels or advertisements for the Accused Products do not disclose any non-infringing uses for the products or for the compounds.

70.     The inclusion of these specific infringing compounds in the products is material to practicing such methods.

71.     Defendants have knowledge that the Accused Products are especially adapted by end-users of the products for the practicing of such methods, and, indeed, Defendants encourage, urge, and induce the Accused Products' end-users to purchase and orally administer the Accused Products to practice such methods, and have done so in the past.

72.     Defendants have intentionally and knowingly induced, encouraged, and urged end-users of the Accused Products to purchase and orally administer the Accused Products for the purposes recited in one or more claims of the '531 Patent, by having them orally ingest the compounds recited in such claims.

73.     Defendants have knowledge of the fact that the Accused Products, particularly as administered, infringe on one or more claims of the '531 Patent.

74.     Defendants also have direct, firsthand knowledge of the '531 Patent.

75.     Defendants' activities have been without express or implied license by Plaintiff.

76.     As a result of Defendants' acts of infringement, Plaintiff has suffered and will continue to suffer damages in an amount to be proved at trial.

77.     As a result of Defendants' acts of infringement, Plaintiff has been and will continue to be irreparably harmed by Defendants' infringement, which will continue unless Defendants are enjoined by this Court.

78.     Defendants' past infringement and/or continuing infringement have been deliberate and willful, and this case is therefore an exceptional case, which warrants an award of treble damages and attorneys' fees in accordance with 35 U.S.C. § 285.

## V.  SECOND CAUSE OF ACTION
### INFRINGEMENT OF U.S. PATENT NO. 8,466,187

79.     Plaintiff incorporates the foregoing paragraphs of this Complaint by reference as if fully set forth herein.

80.     Defendants have in the past and continue to directly infringe— literally and under the doctrine of equivalents—one or more claims of the '187 Patent by making, using, selling, and offering for sale the Accused Products, and will continue to do so unless enjoined by this Court.

81.     In addition to the fact that Defendants make, use, offer for sale, and sell the Accused Products, further examples of Defendants' direct infringement include, without limitation, the fact that Defendants have encouraged and/or are aware of the fact that their employees, agents, representatives, and other individuals sponsored by or who endorse Defendants and Defendants' products in

advertising and marketing activities orally administer the Accused Products and practice the methods recited in one or more claims of the '187 Patent, and these employees, agents, representatives, and other individuals sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities are acting under Defendants' direction and control when practicing those methods.

82.    Defendants have encouraged and are aware of these individuals' oral administration of the Accused Products for these purposes, these individuals are acting under Defendants' direction and control, and therefore Defendants are directly practicing the methods disclosed in the '187 Patent.

83.    End-users of Defendants' Accused Products are also direct infringers of one or more claims of the '187 Patent.

84.    End-users of Defendants' Accused Products have taken, used, and orally administered the Accused Products.

85.    The Accused Products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include certain ingredients that, by virtue of their inclusion in the products, infringe one or more claims of the '187 Patent.

86.    The Accused Products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include specific ingredients for purposes that, by their inclusion in the products for such purposes, infringe one or more claims of the '187 Patent, and as a result, when end-users of Defendants' Accused Products orally administer the Accused Products, they are practicing the methods recited in one or more claims of the '187 Patent.

87.    Defendants' labels and advertising for the Accused Products explain the elements and essential elements of the methods disclosed in the '187 Patent, and those labels and advertising statements encourage, urge, and induce the Accused Products' end-users to purchase and orally ingest the products to practice those methods, and end-users do practice those methods.

88.    Defendants have therefore specifically intended to cause these end-users to directly infringe the claimed methods of the '187 Patent, and have in fact urged them to do so.

89.    The Accused Products are not suitable for non-infringing uses, and Defendants' labels or advertisements for the Accused Products do not disclose any non-infringing uses for the products or for the compounds.

90.    The inclusion of these specific infringing compounds in the products is material to practicing such methods.

91.    Defendants have knowledge that the Accused Products are especially adapted by end-users of the products for the practicing of such methods, and, indeed, Defendants encourage, urge, and induce the Accused Products' end-users to purchase and orally administer the Accused Products to practice such methods, and have done so in the past.

92.    Defendants have intentionally and knowingly induced, encouraged, and urged end-users of the Accused Products to purchase and orally administer the Accused Products for the purposes recited in one or more claims of the '187 Patent, by having them orally ingest the compounds recited in such claims.

93.    Defendants have knowledge of the fact that the Accused Products, particularly as administered, infringe on one or more claims of the '187 Patent.

94.    Defendants also have direct, firsthand knowledge of the '187 Patent.

95.    Defendants' activities have been without express or implied license by Plaintiff.

96.    As a result of Defendants' acts of infringement, Plaintiff has suffered and will continue to suffer damages in an amount to be proved at trial.

97.    As a result of Defendants' acts of infringement, Plaintiff has been and will continue to be irreparably harmed by Defendants' infringement, which will continue unless Defendants are enjoined by this Court.

98.   Defendants' past infringement and/or continuing infringement have been deliberate and willful, and this case is therefore an exceptional case, which warrants an award of treble damages and attorneys' fees in accordance with 35 U.S.C. § 285.

## VI.  THIRD CAUSE OF ACTION
### INFRINGEMENT OF U.S. PATENT NO. 8,183,288

99.   Plaintiff incorporates the foregoing paragraphs of this Complaint by reference as if fully set forth herein.

100.  Defendants have in the past and continue to directly infringe— literally and under the doctrine of equivalents—one or more claims of the '288 Patent by making, using, selling, and offering for sale the Accused Products, and will continue to do so unless enjoined by this Court.

101.  In addition to the fact that Defendants make, use, offer for sale, and sell the Accused Products, further examples of Defendants' direct infringement include, without limitation, the fact that Defendants have encouraged and/or are aware of the fact that their employees, agents, representatives, and other individuals sponsored by or who endorse Defendants and Defendants' products in advertising and marketing activities orally administer the Accused Products and practice the methods recited in one or more claims of the '288 Patent, and these employees, agents, representatives, and other individuals sponsored by or who

endorse Defendants and Defendants' products in advertising and marketing activities are acting under Defendants' direction and control when practicing those methods.

102.   Defendants have encouraged and are aware of these individuals' oral administration of the Accused Products for these purposes, these individuals are acting under Defendants' direction and control, and therefore Defendants are directly practicing the methods disclosed in the '288 Patent.

103.   End-users of Defendants' Accused Products are also direct infringers of one or more claims of the '288 Patent.

104.   End-users of Defendants' Accused Products have taken, used, and orally administered the Accused Products.

105.   The Accused Products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include certain ingredients that, by virtue of their inclusion in the products, infringe one or more claims of the '288 Patent.

106.   The Accused Products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendants to include specific ingredients for purposes that, by their inclusion in the products for such purposes, infringe one or more claims of the '288 Patent, and as a result, when end-users of

Defendants' Accused Products orally administer the Accused Products, they are practicing the methods recited in one or more claims of the '288 Patent.

107.   Defendants' labels and advertising for the Accused Products explain the elements and essential elements of the methods disclosed in the '288 Patent, and those labels and advertising statements encourage, urge, and induce the Accused Products' end-users to purchase and orally ingest the products to practice those methods, and end-users do practice those methods.

108.   Defendants have therefore specifically intended to cause these end-users to directly infringe the claimed methods of the '288 Patent, and have in fact urged them to do so.

109.   The Accused Products are not suitable for non-infringing uses, and Defendants' labels or advertisements for the Accused Products do not disclose any non-infringing uses for the products or for the compounds.

110.   The inclusion of these specific infringing compounds in the products is material to practicing such methods.

111.   Defendants have knowledge that the Accused Products are especially adapted by end-users of the products for the practicing of such methods, and, indeed, Defendants encourage, urge, and induce the Accused Products' end-users

to purchase and orally administer the Accused Products to practice such methods, and have done so in the past.

112.   Defendants have intentionally and knowingly induced, encouraged, and urged end-users of the Accused Products to purchase and orally administer the Accused Products for the purposes recited in one or more claims of the '288 Patent, by having them orally ingest the compounds recited in such claims.

113.   Defendants have knowledge of the fact that the Accused Products, particularly as administered, infringe on one or more claims of the '288 Patent.

114.   Defendants also have direct, firsthand knowledge of the '288 Patent.

115.   Defendants' activities have been without express or implied license by Plaintiff.

116.   As a result of Defendants' acts of infringement, Plaintiff has suffered and will continue to suffer damages in an amount to be proved at trial.

117.   As a result of Defendants' acts of infringement, Plaintiff has been and will continue to be irreparably harmed by Defendants' infringement, which will continue unless Defendants are enjoined by this Court.

118.   Defendants' past infringement and/or continuing infringement have been deliberate and willful, and this case is therefore an exceptional case, which

warrants an award of treble damages and attorneys' fees in accordance with 35 U.S.C. § 285.

## VII.  FOURTH CAUSE OF ACTION
### INFRINGEMENT OF U.S. PATENT NO. 8,178,572[1]

119.   Plaintiff incorporates the foregoing paragraphs of this Complaint by reference as if fully set forth herein.

120.   Retailer Defendants have in the past and continue to directly infringe—literally and under the doctrine of equivalents—one or more claims of the '572 Patent by making, using, selling, and offering for sale the Accused Products, and will continue to do so unless enjoined by this Court.

121.   In addition to the fact that Retailer Defendants make, use, offer for sale, and sell the Accused Products, further examples of Retailer Defendants' direct infringement include, without limitation, the fact that Retailer Defendants have encouraged and/or are aware of the fact that their employees, agents,

---

[1] In this Cause of Action, Plaintiff alleges that a certain subset of the Defendants, namely Retailer Defendants, infringe the '572 Patent.   To be clear, in this Complaint, Plaintiff does not allege that Manufacturer/Distributor Defendants infringe the '572 Patent.   Plaintiff made such infringement allegations in a previously filed patent infringement action currently pending in the United States District Court for the District of Arizona.   *See ThermoLife Int'l, LLC v. Hi-Tech Pharms., Inc.*, No. 12-cv-01466-DLR (D. Ariz. July 6, 2012).   In that previously filed Arizona action, however, the Arizona District Court presumably cannot exercise personal jurisdiction over Retailer Defendants as this Court can do in the instant case.

representatives, and other individuals sponsored by or who endorse Retailer Defendants and Retailer Defendants' products in advertising and marketing activities orally administer the Accused Products and practice the methods recited in one or more claims of the '572 Patent, and these employees, agents, representatives, and other individuals sponsored by or who endorse Retailer Defendants and Retailer Defendants' products in advertising and marketing activities are acting under Retailer Defendants' direction and control when practicing those methods.

122. Retailer Defendants have encouraged and are aware of these individuals' oral administration of the Accused Products for these purposes, these individuals are acting under Retailer Defendants' direction and control, and therefore Retailer Defendants are directly practicing the methods disclosed in the '572 Patent.

123. End-users of Retailer Defendants' Accused Products are also direct infringers of one or more claims of the '572 Patent.

124. End-users of Retailer Defendants' Accused Products have taken, used, and orally administered the Accused Products.

125. The Accused Products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Retailer Defendants to include

certain ingredients that, by virtue of their inclusion in the products, infringe one or more claims of the '572 Patent.

126.   The Accused Products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Retailer Defendants to include specific ingredients for purposes that, by their inclusion in the products for such purposes, infringe one or more claims of the '572 Patent, and as a result, when end-users of Retailer Defendants' Accused Products orally administer the Accused Products, they are practicing the methods recited in one or more claims of the '572 Patent.

127.   Retailer Defendants' labels and advertising for the Accused Products explain the elements and essential elements of the methods disclosed in the '572 Patent, and those labels and advertising statements encourage, urge, and induce the Accused Products' end-users to purchase and orally ingest the products to practice those methods, and end-users do practice those methods.

128.   Retailer Defendants have therefore specifically intended to cause these end-users to directly infringe the claimed methods of the '572 Patent, and have in fact urged them to do so.

129.   The Accused Products are not suitable for non-infringing uses, and Retailer Defendants' labels or advertisements for the Accused Products do not disclose any non-infringing uses for the products or for the compounds.

130.   The inclusion of these specific infringing compounds in the products is material to practicing such methods.

131.   Retailer Defendants have knowledge that the Accused Products are especially adapted by end-users of the products for the practicing of such methods, and, indeed, Retailer Defendants encourage, urge, and induce the Accused Products' end-users to purchase and orally administer the Accused Products to practice such methods, and have done so in the past.

132.   Retailer Defendants have intentionally and knowingly induced, encouraged, and urged end-users of the Accused Products to purchase and orally administer the Accused Products for the purposes recited in one or more claims of the '572 Patent, by having them orally ingest the compounds recited in such claims.

133.   Retailer Defendants have knowledge of the fact that the Accused Products, particularly as administered, infringe on one or more claims of the '572 Patent.

134.   Retailer Defendants also have direct, firsthand knowledge of the '572 Patent.

135.   Retailer Defendants' activities have been without express or implied license by Plaintiff.

136.   As a result of Retailer Defendants' acts of infringement, Plaintiff has suffered and will continue to suffer damages in an amount to be proved at trial.

137.   As a result of Retailer Defendants' acts of infringement, Plaintiff has been and will continue to be irreparably harmed by Retailer Defendants' infringement, which will continue unless Retailer Defendants are enjoined by this Court.

138.   Retailer Defendants' past infringement and/or continuing infringement have been deliberate and willful, and this case is therefore an exceptional case, which warrants an award of treble damages and attorneys' fees in accordance with 35 U.S.C. § 285.

139.   Plaintiff further believes that Retailer Defendants, by virtue of their sale of the Accused Products, also are infringing Plaintiff's United States Patent No. 7,777,074 ("the '074 Patent"), which is currently undergoing re-examination.

Plaintiff may seek to amend this Complaint to assert the '074 Patent against Retailer Defendants depending on the outcome of the re-examination proceedings.[2]

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

a.  Enter a judgment that Manufacturer/Distributor Defendants have directly and indirectly infringed the '531 Patent, the '187 Patent, and the '288 Patent under 35 U.S.C. §§ 271 *et seq.*;

b.  Enter a judgment that Retailer Defendants have directly and indirectly infringed the Patents-in-Suit, under 35 U.S.C. §§ 271 *et seq.*;

c.  Grant a preliminary injunction enjoining Manufacturer/Distributor Defendants, their respective officers, agents, servants, directors, and employees, and all individuals in active concert or participation with each, from directly or indirectly infringing, or inducing or contributing to the infringement by others of, the '531 Patent, the '187 Patent, and the '288 Patent;

---

[2] To be clear, should Plaintiff amend this Complaint to allege infringement of the '074 Patent, such allegations would apply only to Retailer Defendants. Plaintiff alleged infringement of the '074 Patent by Manufacturer/Distributor Defendants in a previously filed patent infringement action currently pending in the United States District Court for the District of Arizona. *See ThermoLife Int'l, LLC v. Hi-Tech Pharms., Inc.*, No. 12-cv-01466-DLR (D. Ariz. July 6, 2012).  In that previously filed Arizona action, however, the Arizona District Court presumably cannot exercise personal jurisdiction over Retailer Defendants as this Court can do in the instant case.

d. Grant a preliminary injunction enjoining Retailer Defendants, their respective officers, agents, servants, directors, and employees, and all individuals in active concert or participation with each, from directly or indirectly infringing, or inducing or contributing to the infringement by others of, the Patents-in-Suit;

e. Grant a permanent injunction enjoining Manufacturer/Distributor Defendants, their respective officers, agents, servants, directors, and employees, and all individuals in active concert or participation with each, from directly or indirectly infringing, or inducing or contributing to the infringement by others of, the '531 Patent, the '187 Patent, and the '288 Patent;

f. Grant a permanent injunction enjoining Retailer Defendants, their respective officers, agents, servants, directors, and employees, and all individuals in active concert or participation with each, from directly or indirectly infringing, or inducing or contributing to the infringement by others of, the Patents-in-Suit;

g. Require Defendants to provide to Plaintiff an accounting of all gains, profits, and advantages derived by Defendants' infringement, and award Plaintiff damages adequate to compensate Plaintiff for Defendants' infringing acts, in accordance with 35 U.S.C. § 284;

h. Increase Plaintiff's damages award up to three times, in view of Defendants' willful infringement, in accordance with 35 U.S.C. § 284;

i.   Award Plaintiff interest and costs pursuant to 35 U.S.C. § 284;

j.   Declare this case exceptional under 35 U.S.C. § 285, and award Plaintiff its reasonable attorneys' fees, expenses, and costs incurred in connection with this action; and

k.   Grant Plaintiff such other and further relief as this Court may deem just and proper.

## IX.  DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a jury trial on all issues so triable.

Dated: March 27, 2015                    Respectfully submitted,

*/s/ Katrina M. Quicker*
Katrina M. Quicker
Ga. Bar No. 590859
Jason P. Grier
Ga. Bar No. 869343
BAKER & HOSTETLER LLP
1180 Peachtree Street, NE, Suite 1800
Atlanta, GA 30309-7512
Telephone:   (404) 459-0050
Facsimile:   (404) 459-5734
kquicker@bakerlaw.com
jgrier@bakerlaw.com

*Attorneys for Plaintiff ThermoLife International, LLC*

OF COUNSEL:
Joseph Lucci
David Farsiou
BAKER & HOSTETLER LLP
2929 Arch Street
Cira Centre, 12th Floor
Philadelphia, PA 19104-2891
Telephone:   (215) 568-3100
Facsimile:    (215) 568-3439
jlucci@bakerlaw.com
dfarsiou@bakerlaw.com